# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs February 23, 2012

## STATE OF TENNESSEE v. NICHOLAS CLOWER

**Appeal from the Circuit Court of Montgomery County**
**No. 40700129     Michael R. Jones, Judge**

---

**No. M2011-01145-CCA-R3-CD - Filed May 16, 2012**

---

Nicholas Clower ("the Defendant") pled guilty to two counts of sale and delivery of less than 0.5 grams of cocaine.  Pursuant to the plea agreement, the Defendant was sentenced to six years' probation on each count, to be served concurrently.  Upon the filing of a revocation warrant and subsequent amended warrants, the Defendant was taken into custody, and a probation revocation hearing was held.  At the conclusion of the hearing, the trial court revoked the Defendant's probation and ordered him to serve the remainder of his sentence in confinement.  The Defendant has appealed the trial court's ruling, asserting that the trial court erred in determining that the Defendant possessed a weapon in violation of his probation and in requiring the Defendant to serve the remainder of his sentence in incarceration.  Upon a thorough review of the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Travis N. Meeks, Clarksville, Tennessee, for the appellant, Nicholas Clower.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Senior Counsel; John W. Carney, District Attorney General; and Samuel Knowlton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

On June 6, 2007, the Defendant pled guilty to two counts of sale and delivery of less than 0.5 grams of cocaine.  In accordance with the plea agreement, the Defendant received

concurrent sentences of six years' probation. A probation violation warrant was issued on September 21, 2009, but the trial court dismissed this warrant on January 28, 2010. Thus, the Defendant's probation was reinstated at this point. Another probation violation warrant was issued on August 30, 2010, followed by three amended warrants, alleging the following probation violations: that the Defendant was arrested for manufacture/sale/delivery of cocaine, possession of drug paraphernalia, possession of a weapon during a felony, unlawful weapon possession, aggravated assault, domestic assault, and violating his conditions of release;[1] that the Defendant possessed a weapon while on probation; that the Defendant changed residences without notifying his probation officer; and that the Defendant failed to report to his probation officer. The trial court held a probation revocation hearing on April 13, 2011.

Juanita Donald, an officer with the Board of Probation and Parole, testified that she had been the Defendant's probation officer since June 6, 2007, when the Defendant was placed on probation for his underlying offenses. At that time, she explained to the Defendant the rules of his probation, provided him with a copy of those rules, and obtained his signature acknowledging his understanding of the rules. On August 30, 2010, Donald executed a violation of probation warrant for the Defendant because the Defendant had been arrested on new charges and had stopped reporting to Donald. When the Defendant stopped reporting, Donald visited the Defendant's home and learned that the Defendant had moved residences without informing Donald, another violation of his probation. Thus, Donald filed a subsequent violation warrant, citing this rule violation. Then, in March of 2011, she executed an additional amended warrant based on the Defendant's violation of the rule requiring that the Defendant "not receive, own, possess, ship, or transport any firearms, ammunition, or illegal weapons."

Patrol Sergeant Chad Koyama, Clarksville Police Department ("CPD"), testified that on April 2, 2010, as part of the tactical unit, he was serving a narcotics search warrant at 19 Oak Lane. As his team approached the house, he noticed an individual running from the back of the house. Upon entering the residence, Sergeant Koyama observed the Defendant sitting on a couch in the living room. At the probation revocation hearing, he identified the pistol that he found under a chair in the living room. The Defendant was sitting approximately five to six feet from this chair.

On cross-examination, Sergeant Koyama stated that he was not sure how long the Defendant had been at 19 Oak Lane when they arrived. He also identified the Defendant as

---

[1] The charges for aggravated assault, domestic assault, and the violation of his conditions of release were subsequently dismissed. Accordingly, the State opted not to proceed on these grounds as bases for the revocation of the Defendant's probation.

the only individual in the house when they executed the warrant. Sergeant Koyama described the chair and explained that, in order to find the weapon, he had to lift the chair off the ground.

Agent Tybis Woody, a drug agent with the CPD, testified that he was the lead agent executing the search warrant on April 2, 2010. He entered the residence once it was secure and observed the Defendant sitting on the couch. He also observed several items, including cash, cell phones, and "a baggie with white crystalline rock." Agent Woody stated, "On one of the shelves [of an entertainment center was] a Ziploc bag, or bag – sandwich baggie with 22 Magnum rounds, a box of 22 Magnum rounds, a corner bag with a white crystalline rock substance, and a box on the outside shows a cell phone digital scale." He explained that the purpose of the digital scale is to weigh controlled substances. The crystalline rock substance later field tested positive for cocaine salts. They also found a crystalline rock substance behind the residence. Additionally, Agent Woody identified a photograph of a weapon as the 22-caliber Derringer found in the living room. He confirmed that the gun was loaded when he inspected it on that day.

On cross-examination, Agent Woody acknowledged that his team had been conducting controlled buys from 19 Oak Lane and that the individual from whom they were buying was not the Defendant. Additionally, while inspecting the house, he and his team found many items of paperwork bearing the name "Simmons" and not that of the Defendant.

Denotria Patterson, a forensic chemist in the Tennessee Bureau of Investigation ("TBI") crime lab, testified as an expert in the field of chemistry and narcotics analysis. She tested two substances that both tested positive for cocaine.

Jennifer Spivey, a special agent forensic scientist at TBI, testified as an expert in the field of latent print analysis. She explained, "A latent print is the reproduction of the elevated ridges of the skin made by the transfer of sweat or oily material left behind on an object after it's been touched." Agent Spivey identified the 22-caliber Derringer on which she was asked to analyze the prints. In performing the analysis and comparing the prints with that of the Defendant, she discovered a print that matched the right index finger of the Defendant. Agent Spivey stated that there were no other prints found on the weapon. Although she only found a partial print, Agent Spivey stated that enough of the print was evident to match it conclusively to the Defendant.

Deshawna Simmons testified that she was the tenant of 19 Oak Lane. However, at the time the police executed the warrant, she no longer lived at that residence. She stated that she was allowing her brother, Antonio Simmons, to occupy the residence. Simmons identified the weapon found at the residence as her gun. She had received the gun from a

boyfriend because the house was in a "really bad neighborhood," but she left the gun at the residence when she moved out.

Sherica Harris testified that she was the Defendant's girlfriend. She stated that, on the day the Defendant was arrested, she had spent most of the day with the Defendant. However, a few minutes after the Defendant dropped her off at work, she received a text message from the Defendant's mother, informing her that the Defendant had been arrested shortly after arriving at 19 Oak Lane. Harris stated that, prior to the Defendant dropping her off at work, he did not have a gun or cocaine on his person that day. She acknowledged that she had seen the gun before and identified the gun as belonging to Simmons. She denied ever seeing the gun in the Defendant's possession.

The Defendant testified that on the day he was arrested, he dropped off his girlfriend at work. Then, he drove over to 19 Oak Lane, walked in the door, and threw some candy in the trash. Approximately five or six minutes after entering the house, he heard someone say that the SWAT team was outside, and the three other individuals in the house fled through the back of the house. The Defendant walked toward the front of the house with his hands up, ready to surrender. Defense counsel asked the Defendant why he chose not to run. The Defendant replied, "Because I didn't have any – I wasn't guilty of anything. I didn't have anything to run for." He denied knowing that there was a gun in the living room. Although the Defendant acknowledged touching and holding the gun when Simmons first acquired it, he stated that he had not touched the gun in any recent time leading up to his arrest on that day.

On cross-examination, although the Defendant could not remember exactly when it was that he held the gun, he agreed that it was sometime after he had been placed on probation. However, when the State pressed the Defendant about the fact that holding the gun while on probation would violate the terms of his probation, the Defendant stated, "I wasn't holding the gun. I probably touched the gun but I've never held the gun."

After considering the proof, the trial court stated, "There's uncontroverted proof that [the Defendant] violated the terms of his probation by failing to report and moving without permission. The other matters include a weapon, which was found in close proximity to him and had his fingerprint on it. That's sufficient for a preponderance of the evidence to find that he was in possession of a handgun while on probation, which, of course, is another violation." The trial court decided not to make a finding as to the possession of cocaine, based on the fact that there were several other individuals in the house. Accordingly, the trial court found the Defendant "in violation based on possession of the weapon, his failing to report and moving without permission." The trial court ordered the Defendant to serve the remainder of his sentence in confinement. The Defendant timely appealed.

-4-

## Analysis

The Defendant asserts that the "[t]rial court erred by finding that the State had proved by preponderance of the evidence that the Defendant possessed a handgun on April 1, 2010." He also contends that the trial court erred in requiring that the Defendant serve the rest of his sentence in incarceration.

Tennessee Code Annotated section 40-35-311 provides that, in a probation revocation proceeding, the court "may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." Tenn. Code Ann. § 40-35-311(d) (2010). And,

> [i]f the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence, and:
>
> (A) Cause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with [section] 40-35-310; or
>
> (B) Resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of probation and suspension is a technical one and does not involve the commission of a new offense.

Id. § 40-35-311(e)(1); see also State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999).

Thus, the State must only prove that the defendant violated the terms of his or her probation by a preponderance of the evidence. In this regard, "[t]he trial judge has a duty at probation revocation hearings to adduce sufficient evidence to allow him [or her] to make an intelligent decision." State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991); see also State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) ("The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment.") (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).[2]

_____

[2] In Harkins, our Supreme Court stated that, "[i]n order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." 811 S.W.2d at 82. However, as this Court pointed out in State v. Farrar, 355
(continued...)

-5-

On appeal, we will not disturb the trial court's decision to revoke probation absent an abuse of discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); see also State v. Reams, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). We will grant relief only when "'the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved.'" Shaffer, 45 S.W.3d at 555 (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

The Defendant first asserts that the trial court erred in determining by a preponderance of the evidence that the Defendant possessed a weapon while on probation. One of the terms of the Defendant's probation was, "I will not receive, own, possess, ship, or transport any firearms, ammunition or illegal weapons." Our supreme court has recognized "possession" to be either actual or constructive. See State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). By analogy, in the drug possession context, "[c]onstructive possession requires proof that a person had 'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" Id. (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Furthermore, "[o]ne's mere presence in an area where drugs are discovered, or one's mere association with a person in possession of drugs, is not alone sufficient to support a finding of constructive possession." Id. (citations omitted).

Here, the trial court found that the gun was discovered near the Defendant and contained his fingerprint. Thus, the trial court determined that such facts sufficiently established by a preponderance of the evidence that the Defendant possessed a handgun while on probation. Moreover, when first questioned about the gun, the Defendant testified that he held the gun when Simmons first acquired it. He also admitted that the occasion when he held the gun would have been while he was on probation. Although mere presence is not enough to establish constructive possession, the record reflects that the Defendant was found in close proximity to the weapon, his fingerprint was on the weapon, and he initially admitted to holding the gun while on probation. This Court previously has determined that sufficient evidence exists for a finding of possession when a defendant admitted to holding a gun when looking to buy it and acknowledged that his fingerprints would be on the weapon. See State v. Marquis Devereaux Hall, No. M2010-00711-CCA-R3-CD, 2011 WL 3557825, at *5 (Tenn. Crim. App. Aug. 12, 2011), perm. app. denied, (Tenn. Oct. 19, 2011).

---

[2](...continued)
S.W.3d 582 (Tenn. Crim. App. 2011), "the statute governing probation revocation in effect at the time of . . . Harkins . . . contained no specific burden of proof to be met before the trial court could revoke probation." Farrar, 355 S.W.3d at 586. As set forth above, the statute applicable in this case permits the trial court to revoke probation upon finding only by a preponderance of the evidence that the defendant has violated the terms of his or her probation. Therefore, we join the Farrar panel in "question[ing] whether the 'no substantial evidence' language of Harkins remains applicable to the determination whether the trial court abused its discretion when revoking probation." Farrar, 355 S.W.3d at 586.

Thus, the trial court in this case did not abuse its discretion in determining that the Defendant possessed a gun in violation of his probation.

Furthermore, even if this Court were to hold that the Defendant did not possess the gun in violation of his probation, the trial court determined that the Defendant also had two other probation violations. The trial court found that there was "uncontroverted proof" that the Defendant violated probation by failing to report to his probation officer and failing to notify the officer of his change in residence. The Defendant has not challenged either of the other violations. This Court has stated, "There need be only one violation of the conditions of probation to support revocation." State v. Phillip Thomas Wilcox, No. M2002-00667-CCA-R3-CD, 2003 WL 21047133, at *2 (Tenn. Crim. App. May 9, 2003). Thus, the trial court did not abuse its discretion in determining that the Defendant violated the terms of his probation.

The Defendant also argues that the trial court erred when it required the Defendant to serve the remainder of his sentence in incarceration. When a trial court revokes a defendant's probation, the court then may order the defendant to serve out his or her original sentence. See Tenn. Code Ann. §§ 40-35-310 (2010) and -311(e); State v. Taylor, 992 S.W.2d 941, 945 (Tenn. 1999). "This court has repeatedly cautioned that 'an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing.'" State v. Juan Manuel Coronado, II, No.E2010-01058-CCA-R3-CD, 2011 WL 704543, at *3 (Tenn. Crim. App. Mar. 1, 2011) (quoting State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)) (other citation omitted). The trial court found that the Defendant violated his probation by possessing a weapon, failing to report to his probation officer, and failing to notify the officer of his change in residence. Thus, there was no error on the part of the trial court in requiring the Defendant to serve the remainder of his original sentence in incarceration.

### Conclusion

The trial court did not err in revoking the Defendant's probation and ordering him to serve the remainder of his sentence in confinement. Accordingly, the judgment of the trial court is affirmed.

_____
JEFFREY S. BIVINS, JUDGE